IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RICHARD COOK and CARMEN L. COOK,<br><br>Plaintiffs,<br><br><br>v.<br><br><br>CHASE MANHATTAN MORTGAGE<br>CORPORATION, a New Jersey Corporation,<br><br>Defendant. | ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:05-cv-00016 |

      This case requires the court to determine whether Defendant Chase Manhattan Mortgage Corporation appropriately managed the mortgage loan of Plaintiffs Richard and Carmen L. Cook. The current dispute arises out of the Cooks' alleged defaults on their home mortgage loan and the ultimate foreclosure of their property. A little over one year after the Cooks were evicted from their home, they filed suit against Chase alleging breach of contract, fraud, and violations under the Real Estate Settlement Procedures Act, Fair Debt Collection Practices Act, and the Utah Mortgage Lending and Servicing Act. At the heart of these claims is the allegation that Chase improperly failed to credit payments to their account, forcing the Cooks to make a July 2002 payment of $3,098.76 to cure an alleged history of non-payment. As primary support for these claims, the Cooks argue that their payments to Chase of $500.00 a month were more than sufficient to cover what they believed was a fixed monthly payment obligation of $419.92.

      Chase has filed for summary judgment arguing the Cooks' July 2002 payment of

$3,098.76 to reinstate the loan was an accord and satisfaction of their dispute and the Cooks are precluded from making claims about the alleged missed payments prior to the Reinstatement. Chase also argues that the doctrines of waiver and estoppel preclude the Cooks' causes of action because the Cooks failed to seek or obtain judicial relief to stop the 2003 foreclosure.  Moreover, Chase asserts there is no factual dispute that the Cooks missed and/or failed to make timely payments for many months, and that their payments of $500.00 were not sufficient to cover their payment obligations – specifically escrow items –  provided for in the loan documents and plainly described in annual notice letters received by the Cooks.

The court finds that the Cooks' July 2002 payment was in accord and satisfaction of its pre-July 2002 dispute with Chase, and, accordingly, the Cooks are precluded from alleging misapplication of funds prior to this payment.  Even if the Cooks were not precluded from asserting claims against Chase for misapplication of funds, there is no genuine dispute that the Cooks' apparent misunderstanding of its obligations resulted in their failure to properly make numerous payments leading up to July 2002.  For those claims that arguably fall outside the purview of the Reinstatement, Chase has demonstrated that no genuine issue of material fact exists that would prevent summary judgment for Chase on these claims.  With regard to Chase's alleged wrongful acts between July 2002 and November 2003, Chase has also demonstrated that there is no genuine factual dispute that the Cooks failed to properly make numerous payments and that Chase acted appropriately in the default proceedings and ultimate foreclosure of the Cook property.  Consequently, the court GRANTS Chase's motion for summary judgment on all claims (#23).

**BACKGROUND**

When considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.[1]  Viewed in this light, the court finds the following facts.

In August 1999, the Cooks received a mortgage loan from M & T Mortgage Corporation, and signed a Note, dated August 4, 1999, which memorialized the loan.  The Note was secured by a Deed of Trust on the property and residence located at 473 South 1000 West, Salt Lake City, Utah, 84104.  The Deed of Trust, also dated August 4, 1999, was signed by the Cooks.  By September 1, 1999, M & T Mortgage had assigned all its rights to the Note and Deed of Trust to Chase Manhattan Mortgage Corporation.

**The Note**

The Note provides that the Cooks "will pay principal and interest by making payments every month," with these payments to take place "on the [first] day of each month beginning on October 1999."[2]  Under the Note, the Cooks agree to "make these payments every month until [they] have paid all of the principal and interest and any other charges described below that [they] may owe under [the] Note."[3]  Item 3(B) reads that the monthly payment will be in the amount of $419.92.  Under the "Default" provision, the Cooks would be considered to be in default it they did not "pay the full amount of each monthly payment on the date it [was] due . . .

---

[1] *Cortez v. McCauley*, 438 F.3d 980, 988 (10th Cir. 2006).

[2] Note, Item 3(A), Def.'s Mem. Supp. Summ. J. Ex. 1 [Docket No. 24].

[3] *Id.*

."[4]  Should the Cooks default on the loan, the Note provides that the holder

> may send [the Cooks] a written notice telling [them] that if [they] do not pay the
> overdue amount by a certain date, the Note holder may require [them] to pay
> immediately the full amount of principal which has not been paid and all the Interest
> that [they] owe on that amount.  The date must be at least 30 days after the date on
> which the notice is delivered or mailed to [the Cooks].[5]

The last numbered item, entitled "Uniform Secured Note," reads:

> The Note is a uniform instrument with limited variations in some jurisdictions.  In
> addition to the protection give[n] to the Note Holder under this Note, a Mortgage,
> Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as
> this Note, protects the Note Holder from possible losses which might result if [the
> Cooks] do not keep the promises which [they] make in this Note. That Security
> Instrument describes how and under what conditions [the Cooks] may be required to
> make immediate payment in full of all amount [they] owe under this Note.[6]

**The Deed of Trust**

Concurrent with their signing of the Note, the Cooks signed a Deed of Trust that secured

the Note.  The Deed of Trust "secures to [Chase]: (a) the repayment of the debt evidenced by the

Note, with Interest, and all renewals, extensions and modification of the Note . . . and (c) the

performance of Borrower's covenants and agreements under this [Deed of Trust] and the Note."[7]

Item 2 under the "Uniform Covenants" section provides for funds for taxes and insurance.  It

reads in part:

> Subject to applicable law or to a written waiver by Lender, Borrower shall pay to
> Lender on the day monthly payments are due under the Note, until the Note is paid

---

[4] *Id.* at Item 6(B).

[5] *Id.* at Item 6(C).

[6] *Id.* at Item 10.

[7] Deed of Trust, Def.'s Mem. Supp. Summ. J. Ex. 2 at 1.

> in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums . . . . These items are called "Escrow Items."[8]

This section states that the lender may collect and hold these escrow item funds "in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974 as amended from time to time . . . unless another law that applies to the Funds sets a lesser amount."[9]  In addition to signing their names at the end of the Deed of Trust, the Cooks initialed the page that contained this information about the escrow items.

**The Cooks' 2002 Default**

In each of the years 2000, 2001, 2002, and 2003, the Cooks received an Annual Escrow Account Disclosure Statement.  In the Annual Statement dated October 25, 2001, it reads that the Cooks' "**NEW** monthly mortgage payment for the coming year will be $565.39 of which $419.92 will be for principal and interest and $145.47 will go into [the Cooks'] escrow account."[10]  Under the "NEW payment breakdown"  in this October 2001 statement, $419.92 was for principal and interest, $82.78 was for escrow, and $62.69 was for a "shortage spread," creating a total monthly payment of $565.39.

In a certified letter dated May 26, 2002, Chase informed the Cooks that they were in

---

[8] *Id.* at Item 2(a).

[9] *Id.*

[10] Annual Escrow Account Disclosure Statement of Oct. 25, 2001, Def.'s Mem. Supp. Summ. J. Ex. 3.

"default under the terms of the Note and Deed of Trust because the Cooks failed to pay the required monthly installments and late charges."[11]   The Cooks contacted Chase to dispute the default.  Lundberg & Associates, in a letter dated June 27, 2002, informed the Cooks that their loan had been referred to its office to begin foreclosure proceedings.  After receiving this latter letter, the Cooks hired attorney Greg Smith to help them seek a reinstatement quote, which he did.  The Cooks provided Mr. Smith with copies of all of the checks in their possession relating to their mortgage payments and Mr. Smith in turn prepared a "Payment History" that he provided to Chase as part of a written dispute of Chase's position.[12]   Lundberg responded to the Cooks' request for a reinstatement quote in a letter dated July 10, 2002, in which it provided the Cooks with a reinstatement quote of $3,098.76 that was good until July 29, 2002.  In another letter, dated July 13, 2002, Lundberg responded to the Cooks' written dispute of their default status.  In this July 13 letter, Lundberg justifies its position by explaining that although the Cooks had been making payments of $500.00 per month – as evidenced by the Payment History supplied by the Cooks – the actual monthly payment due was $565.39.  The July 13 letter noted that the last check of the Cooks to be applied to the loan was the March 2002 payment.

Later in July, the Cooks received a Notice of Default and Election to Sell.  This Notice, recorded on July 16, 2002, and date marked as "Sent" on July 17, 2002, states that the Cooks' payments "are due for the months of April 2002 through July 2002 in the amount of $565.39 per

---

[11] Notice of Default Letter dated May 26, 2002, Def.'s Mem. Supp. Summ. J. Ex. 4.

[12] The record is unclear as to whether the Cooks' written dispute of their default status and their request for a reinstatement quote was contained in the same letter or two separate letters. The important fact is that the Cooks submitted a written inquiry of their account status.

month.  Under the provisions of the promissory note and trust deed, the principal balance of

$41,338.99 is accelerated and now due, together with accruing interest, late charges, costs and

trustees' and attorneys' fees."[13]  On July 22, 2002, the Cooks paid Chase $3,098.76.  Upon

receipt of this payment, Chase canceled the Notice of Default, stopped the foreclosure, and

reinstated the loan.

**The Cooks' 2003 Default**

In a letter addressed to the Cooks dated December 8, 2002, Chase informed the Cooks

that they were "in default for failure to make the required monthly payments as they [became]

due."[14]  Four months later, in a letter dated April 25, 2003, Chase once again informed the Cooks

that they were in default under the terms of the Note and Deed of Trust.  The April letter reads in

part:

> You are in default because you have failed to pay the required monthly installments
> and late charges.  As of the date hereof, principal, interest, escrow, late charges, and
> fees of $1,015.04 are due on the loan. . . .  If there is reason to dispute the debt, or any
> portion thereof, you must notify Chase Manhattan in writing within 30 days of this
> notice.[15]

Upon receipt of the April 2003 letter, Ms. Cook sent a payment of $513.91 to Chase, even though

the April letter stated that $1,015.04 was due.  Ms. Cook called Chase to dispute the content of

the letter and allegedly received a call back from Chase informing them that their "mortgage

---

[13] Notice of Default and Election to Sell Property letter dated July 15, 2002, Def.'s Mem.
Supp. Summ. J. Ex. 10.

[14] Notice of Default dated Dec. 8, 2002, Def.'s Mem. Supp. Summ. J. Ex. 13.

[15] Notice of Default Letter dated Apr. 25, 2003, Def.'s Mem. Supp. Summ. J. Ex. 14.

payment was being credited the six months of payments paid the year prior, the $3,098, relieving [them] of any obligation to make a payment till November 2003."[16]  The Payment History submitted by the Cooks does not indicate that the Cooks made payments in November or December of 2002, or made any payments after April 2003.

Chase sent a letter to the Cooks dated June 10, 2003, which notified the Cooks that Chase had once again forwarded their loan to Lundberg to immediately initiate foreclosure proceedings. In a letter sent to the Cooks dated June 12, 2003, Lundberg confirmed that their loan had been referred to its office to begin foreclosure proceedings.  The Cooks remember being notified during the Summer of 2003 that there was going to be a foreclosure on their property because of Chase's contention that they were past due on making loan payments.[17]  Also, on June 27, 2003, Ms. Cook signed for a certified letter from Lundberg with the heading, "Notice of Default and Election to Sell."  This letter, dated June 16, 2003, states:

> Under the provisions of the promissory note and trust deed, the unpaid principal balance is accelerated and now due, together with accruing interest, late charges, costs and trustees' and attorneys' fees.  Accordingly, the trustee has elected to sell the property described in the trust deed.[18]

On September 22, 2003, a Notice of Trustee's Sale for October 23, 2003, was posted in a conspicuous place on the Cook property.  The Cooks do not remember seeing the notice posted

---

[16] C. Cook Aff. ¶ 14; R. Cook Aff. ¶ 14.

[17] C. Cook Dep. 43:5-20.

[18] Notice of Default and Election to Sell letter dated June 16, 2003, Def.'s Mem. Supp. Summ. J. Ex. 17.

on their property because they were in Las Vegas at the time.[19]  Notice for the trustee's sale of the

Cook property was published in *The Intermountain Commercial Record & The Salt Lake Times*

three times between September 19, 2003, and October 3, 2003.  On October 23, 2003, the Cook

Property was sold by the Trustee of the Trust Deed to the highest bidder at the foreclosure sale.

In November 2003, the Cooks were evicted from the property by the sheriff.  On the

morning of their November 2003 eviction, Ms. Cook showed an unsigned letter to the sheriff and

informed him that the letter had been sent to her from Chase.  The letter, dated November 11,

2003, states that Chase had decided to credit $3,098.76 to the Cooks' loan amount and that their

next payment was due December 1, 2003.  The letter contains a number of irregularities.  The

body of the letter reads as follows:

Dear Mortgagor:                               11/11/03


Research has been completed on the payment information provided.


        The refund balance of $3098.76 has been posted to your account.
As of   July 01, 2003 to November 01, 2003 this amount has been adjusted to
your loan, 6 payments of $513.00 per month.

        As of today your loan payment is due December 01,2003 in the
amount of $513.00.  With a $20.00 balance to be applied to your suspended
funds.

         If you have any further questions regarding this issue please contact
Customer Service Department at 1-800-848-9136.

---

[19] C. Cook Dep. 45:2-8.

Chase's goal is to provide [*sic*] the highest quality service.[20]

Chase denies sending the letter and maintains that the letter is a forgery.  Although the Cooks admit to receiving notice that Chase was initiating foreclosure proceedings against them, the Cooks assert that they did not become aware of the sale until after they were being evicted.  At no time did the Cooks, from the time of their receipt of the default notices in June 2003 to their eviction from the property in November 2003, send a written dispute to Chase regarding the default and foreclosure proceedings.

The Cooks filed a Complaint against Chase in state court on November 19, 2004, alleging breach of contract, fraud, and violations under the Real Estate Settlement Procedures Act, Fair Debt Collection Practices Act, and the Utah Mortgage Lending and Servicing Act.  The case was removed to federal court in January 2005.  On March 1, 2006, Chase filed a motion for summary judgment.[21]

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[20] Letter from Chase dated Nov. 11, 2003, Def.'s Mem. Supp. Summ. J. Ex. 26.  The court's recreation of the body of this letter includes the apparent spacing and typing irregularities found in the original document.

[21] The long delay between this order and the original motion for summary judgment is a result of a colleague judge's recusal in this matter months after the summary judgment motion had been fully briefed.

matter of law."[22]  In evaluating a motion for summary judgment, the evidence and reasonable inferences drawn therefrom should be viewed in the light most favorable to the nonmoving party, in this case, the Cooks.

In addition to seeking summary judgment on the basis of undisputed fact and law, Chase also seeks summary judgment based on affirmative defenses.  Where the defendant seeks summary judgment on the basis of affirmative defenses, the defendant "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."[23]  If Chase meets this initial burden, the Cooks must then demonstrate with specificity the existence of a disputed material fact.[23]   If the Cooks fail to make such a showing, Chase's affirmative defenses will bar the Cooks' respective claims, and Chase will be entitled to summary judgment on those claims as a matter of law.[24]

## DISCUSSION

 At the heart of the Cooks' claims against Chase is the allegation that Chase improperly failed to credit payments to their account before the July 2002 Reinstatement.  As specific causes of action, the Cooks allege breach of contract, fraud, and violations under the Real Estate Settlement Procedures Act, Fair Debt Collection Practices Act, and the Utah Mortgage Lending

---

[22] Fed. R. Civ. P. Rule 56(c).

[23] *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[23] *Id.*

[24] *Id.*

and Servicing Act.  Specifically, the Cooks assert that Chase has misapplied funds on six

occasions:

> (1)  In January 2000, Chase corrected an error created in their accounting in October 1999, where Chase lost two money orders.  In a letter dated January 14, 2000, Chase conceded an error and attempted to correct the Cooks payment history;

> (2)  On June 7, 2000, the Cooks were accused to not paying their April 2000, May 2000, and June 2000 payments.  In response, Carmen Cook faxed the proof of those three payments;

> (3)  In March 2002, Chase accused the Cooks that not enough had been paid for their payments.  Proof of payment again was paid despite the fact they had always overpaid;

> (4)  In April 2002, Chase accused the Cooks of missing five payment. Carmen Cook faxed over the proof;

> (5)  In July 2002, Chase accused the Cooks of missing three payments. Carmen Cook faxed over the proof; and

> (6)  In November 2003, in a letter dated November 11, 2003, Chase informed the Cooks that their refund balance of $3,098.76 had been posted to the account to cover the payments from July 1, 2003 to November 1, 2003 with an additional $20.00 to be applied to suspended funds.[25]

As support for these allegations, the Cooks point to the fact that they were making mortgage

payments of $500.00 even though they believed that their monthly obligation was only $419.92.

Chase argues that the Cooks' July 2002 payment of $3,098.76 to reinstate the loan was in

accord and satisfaction of their dispute that now precludes the Cooks from making claims about

the allegedly mismanaged payments prior to the Reinstatement.  With respect to the 2003

foreclosure, Chase argues that the doctrines of waiver and estoppel precludes the Cooks' causes

---

[25] Pl.'s Mem. Opp. Summ. J. 8 [Docket No. 26].

of action because the Cooks failed to seek or obtain judicial relief to stop the foreclosure. Moreover, Chase asserts there is no factual dispute that the Cooks missed and/or failed to make timely payments for many months, and that their payments of $500.00 were not sufficient to cover the payment obligations – specifically escrow items – provided for in the loan documents and plainly described in annual notice letters received by the Cooks.

The court finds that Chase did not misapply funds and that it fully complied with its statutory and contractual obligations, devoid of any fraud, misrepresentation, and mismanagement. The Cooks' July 2002 payment was in accord and satisfaction of its pre-July 2002 dispute with Chase, and, accordingly, the Cooks are barred from making claims of mismanagement prior to the Reinstatement. Regardless of this preclusion, the Cooks have failed to produce evidence supporting the first five alleged instances of Chase's misapplication of funds (the pre-reinstatement allegations) other than testimony that they consistently made monthly mortgage payments of $500.00 a month. As is more fully discussed below, the $500.00 payments were not sufficient. For those claims that arguably fall outside the purview of the reinstatement payment, Chase has demonstrated that no genuine issue of material fact exists that would prevent summary judgment for Chase on these claims. With regard to Chase's alleged wrongful acts between July 2002 and November 2003, the court finds that the Cooks have failed to raise a material disputed fact that would save them from summary judgment on these claims.

Before analyzing the specifics of each claim, the court notes that much of this case can be resolved – or at the least, better understood – by a close examination of the loan documents. Throughout their pleadings and affidavits, the Cooks assert that their monthly payment was a

fixed $419.92.[26]  They are correct in so far as the $419.92 was a fixed payment representing the

principal and interest of the loan.[27]  However, what the Cooks apparently fail to consider is that

the Deed of Trust provides for the payment of "Funds for Taxes and Insurance"; in other words,

escrow items.[28]  Specifically, the Cooks were required to pay, on the day monthly payments were

due under the Note, "yearly taxes and assessments which may attain priority over [the Deed of

Trust] as a lien on the Property" and "yearly hazard or property insurance premiums."[29]  In each

of the years 2000, 2001, 2002, and 2003, the Cooks received from Chase an "Annual Escrow

Account Disclosure Statement" informing them of their monthly payment for the upcoming

year.[30]  For example, the October 25, 2001 statement provided for a "monthly mortgage payment

for the coming year [of]  $565.39 of which $419.92 [would] be for principal and interest and

$145.47 [would] go into [the Cooks'] escrow account."[31]  Despite having received this October

---

[26] R. Cook Aff. ¶ 7; C. Cook Aff. ¶ 7 ("These two documents bound us to a fixed
mortgage payment of $419.92."); Pl.s' Mem. Opp. Summ. J. at 3 [Docket No. 26] ("The monthly
payment was a fix $419.92. (Principal and Interest) . . . . Despite the mortgage of $419.92,
Plaintiffs always paid $500.00 a month."); Pl.s' Mem. Opp. Summ. J. at 5 [Docket No. 26]
(However, being that Plaintiff's mortgage was a fix mortgage and had a fix payment of
$419.92.); Compl. ¶ 13 [Docket No. 1] ("Plaintiff was to make his monthly mortgage payments
to Chase for a sum of less than $500.").

[27] *See* Note, Item 3(B), Def.'s Mem. Supp. Summ. J. Ex. 1 [Docket No. 24].

[28] Deed of Trust, Def.'s Mem. Supp. Summ. J. Ex. 2 at 2(a) [Docket No. 24].

[29] *Id.*

[30] *See* C. Cook Dep. 13:21-25; *see also* Annual Disclosure Statements 2000-2003, Def.'s
Mem. Supp. Summ. J. Ex. 3 [Docket No. 24].

[31] Annual Escrow Account Disclosure Statement of Oct. 25, 2001, Def.'s Mem. Supp.
Summ. J. Ex. 3 [Docket No. 24].

2001 letter, the Cooks made payments of only $500 for the first six months of 2002.[32]

Consequently, the Cooks' assertions that they "always overpaid" because they made payments of

$500.00 are simply inaccurate.

With this backdrop, the parties' frustrations in this case are understandable. Unfortunately

for the Cooks, their apparent misunderstanding of the loan documents and failure to account for

the escrow items critically undermines their allegations that Chase mismanaged and misapplied

their payments.  Consequently, the Cooks' allegations of mismanagement fall flat – especially in

light of the July 2002 Reinstatement.  There are, however, allegations against Chase that are

arguably outside the purview of the 2002 Reinstatement, such as Chase's statutory obligation to

respond to written inquiries.[33]  As more fully described below, these claims also fail because

Chase has demonstrated that no genuine issue of material fact exists that would prevent summary

judgment for Chase.

Because the court finds that the July 2002 Reinstatement operates as an accord and

satisfaction that precludes most of the Cooks' claims arising before the Reinstatement, the court

will separate its discussion into pre-July 2002 events and post-July 2002 events.

### A.  Pre July-2002 Events

The Cooks' allegations of mismanagement by Chase do not only fail as a matter of

---

[32] Payment History, Def.'s Mem. Supp. Summ. J. Ex. 7.  It should also be noted that these payments were not made on the first of every month but were made on the following dates: 01/04/2002; 03/05/2002; 03/20/2002; 4/05/2002; 05/06/2002; 06/05/2002.

[33] *See* 12 U.S.C. § 2605(e).

undisputed fact and law, but their July 2002 Reinstatement payment of $3,098.76 operates as an accord and satisfaction that precludes the Cooks from asserting claims of mismanagement that allegedly occurred before the Reinstatement.[34]  Of the six instances of Chase's alleged mismanagement detailed by the Cooks, five of these alleged events occurred before the July 2002 Reinstatement.  With respect to the two alleged instances of misapplied funds taking place in 2000, the Cooks have failed to submit any evidence supporting these allegations.  Moreover, these claims, at least with respect to RESPA, are barred by a three-year statute of limitations.[35] With respect to the 2002 claims of misapplication of funds, the Cooks' Reinstatement precludes these claims as a matter law.

Under Utah law, an accord and satisfaction, which creates a new contract between parties, occurs when there is a "(1) a bona fide dispute over an unliquidated amount, (2) a payment made in full settlement of the entire dispute, and (3) acceptance of the payment."[36]  In other words, an accord and satisfaction is brought about when both parties agree that "a different performance than that required in the original contract will be made in substitution of the performance originally agreed upon."[37]  Based on the facts of this case, the court finds that the Cooks' July 2002 payment to Chase of $3,098.76 constituted a valid accord and satisfaction.  First, the parties

---

[34] Pl.'s Mem. Opp. Summ. J. 8.

[35] *See* 12 U.S.C. § 2614.

[36] *Smith v. Grand Canyon Expeditions Co.*, 84 P.3d 1154, 1158 (Utah 2003).

[37] *Bennion v. LeGrand Johnson Construction Co.*, 701 P.2d 1078, 1082 (Utah 1985).

were involved in a dispute regarding the status of the Cooks' account.  Second, the Cooks'

payment of $3,098.76 was made in full settlement of the dispute.  Third, Chase accepted the

payment, and in return, agreed to cancel the foreclosure and reinstate the loan.

       The court finds support for its application of accord and satisfaction to the Reinstatement

from the case *Fowers v. Gurney*.[38]  In that case, the Utah Supreme Court reviewed the trial

court's holding that the defendant was not liable for the deficiency on a mortgage foreclosure.[39]

In affirming the trial court's judgment, the *Fowers* court found that the defendant's payment to

reinstate the mortgage loan was an accord and satisfaction that satisfied the deficiency

judgment.[40]  This court finds that Chase has also successfully asserted this affirmative defense

and that the Cooks have failed to demonstrate with specificity the existence of a disputed

material fact.[41]  Accordingly, the Cooks are precluded from making claims about the alleged

misapplication of funds prior to the July 2002 Reinstatement.

       The court also finds that Chase fully complied with its statutory and contractual

obligations in its pre-July 2002  interactions with the Cooks that arguably were not a part of the

dispute that was resolved with the Reinstatement.  Specifically, RESPA requires Chase to

respond to the Cooks' written inquiries within twenty days, and to investigate the issue, correct

---

[38] 448 P.2d 713 (Utah 1968).

[39] *Id.* at 713.

[40] *Id.* at 714.

[41] *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

any errors, and provide a written explanation of the actions, within sixty days.[42]  With respect to the obligation to respond to a written letter and investigate the dispute, the record demonstrates that Chase timely responded to the Cooks' July 2002 written inquiry, and investigated the matter in accordance with statute.[43]  The Cooks admit in their Opposition memorandum that "Chase responded to Plaintiffs 'qualified written dispute letter' through counsel who attempted to 'justify' proceeding with the foreclosure."[44]  The Cooks have not come forward in its summary judgment briefing with evidence of other written disputes to Chase. Also, as is more fully described below, there is no genuine dispute as to any material facts that would support the Cooks' other causes of action in this case.

Even if the court were not to view the Reinstatement as an accord and satisfaction that precludes the Cooks' claims, these claims nevertheless fail as a matter of undisputed fact and law.  As has been discussed above, the Cooks' apparent belief of their mortgage obligation was incorrect.  A thorough reading of the Note and Deed of Trust, coupled with an examination of the Cooks' Payment History, depositions, and affidavits, demonstrate that the Cooks failed to pay the full amount of their required monthly payments at the beginning of each month in the last months of 2001 and the early months of 2002, and that Chase responded to any inquiries from the Cooks in accordance with its statutory and contractual obligations.

---

[42] 12 U.S.C. § 2605(e).

[43] *See* Letter Explaining Past Due Amount dated July 13, 2002, Def.'s Mem. Supp. Summ. J. Ex. 11.

[44] Pl.s' Mem. Opp. Summ. J. at 6.

### B. Post July-2002 Events

The Cooks' claims against Chase stemming from alleged wrongful acts between July 2002 and November 2003 fail as a matter of law because Chase has demonstrated that there is no genuine dispute as to material facts regarding the Cooks' 2003 default and the foreclosure of their property.

Chase asserts the affirmative defense of waiver and estoppel to these claims, arguing that the Cooks' failure to seek or obtain judicial relief to stop the 2003 foreclosure that was premised on the 2003 breaches now estopps the Cooks from making claims against Chase in connection with those events. As legal support for this defense, Chase points to the case *American Falls Canal Securities Co. v. American Savings & Loan Assoc.*[45]  In *American Falls*, the court reviewed the trial court's award of excess proceeds to the owner of a parking structure that was sold at foreclosure. Pertinent to this case, the court noted that "a party otherwise in position to object to a mortgage foreclosure sale may well be precluded from doing so based upon conduct sufficient to bring into operation the doctrines of waiver and estoppel."[46] The Cooks contend that the case is inapplicable because not only did American Falls received notice of the sale and, along with its counsel, attend the sale, but it had also written a letter to the eventual buyer stating that it "had no interest in purchasing the parking structure, in bringing the loan current, or in

---

[45] 775 P.2d 412 (Utah 1989).

[46] *Id.* at 414.

bidding at the sale."[47]  Although the court finds the *American Falls* case distinguishable from the current case, the affirmative defense of waiver and estoppel may still be applicable.  The court, however, finds it unnecessary to apply this doctrine because the undisputed facts surrounding the foreclosure dictates summary judgment in favor of Chase.

A brief analysis of each of the Cooks' claims demonstrates that there is no genuine dispute of a material fact that would preclude summary judgment in favor of Chase.

*1. Real Estate Settlement Procedures Act*

In their complaint, the Cooks allege that Chase violated 12 U.S.C. § 2601, which requires a loan servicer to respond to a qualified written request within twenty days, and, within sixty days, make appropriate correction in the account (if necessary) and explain any action in a written correspondance.  As was noted above, there is a three-year statute of limitations applied to Section 2605(e).[48]  The Cooks conceded in their Opposition that the statute of limitations appears to apply and agreed to "limit the contested transactions to the preceding period of November 20, 2001, to November 19, 2004."[49]  Regardless, the only evidence of a qualified written request supplied by the Cooks was their July 2002 letter.  It is undisputed that Chase investigated the matter and responded appropriately, even if the Cooks may have disagreed with

---

[47] *Id.*

[48] *See* 12 U.S.C. § 2614.

[49] Pl.s' Mem. Opp. Summ. J.

Chase's conclusions.[50]

*2. Utah Mortgage and Service Act of 1990*

The Cooks' second cause of action is for alleged violations of the Utah Mortgage Lending and Servicing Act of 1990.[51]  The specific part of the statute cited by the Cooks requires a lender to credit the borrower's account as of the date a payment was received or by the next banking day.[52]  Chase is entitled to summary judgment on this issue on at least two grounds.  As noted above, the Cooks mistakenly believed that they overpaid when they made their $500.00 payments.  Based on this belief, the Cooks allege that Chase failed to accurately reflect the payments, and had they done so, the foreclosure would not have occurred.  The evidence shows that for many months, the Cooks failed to make proper payments.  In particular, the Cooks stopped paying entirely after April 2003, and missed payments in November and December 2002.[53]  Chase explained its actions in numerous default letters.[54]  The Cooks failed to produce evidence that Chase failed to credit the Cooks' account as of the date it was received or by the next banking day as outlined in the statute.

Even if Chase had failed in this regard, Chase falls under at least one of the exceptions to

---

[50]  Letter Explaining Past Due Amount dated July 13, 2002.

[51]  Utah Code Ann. § 70D-1-1 through 70D-1-21 (2001 & Supp. 2006).

[52]  *Id.* at § 70D-1-7.

[53]  Payment History, Def.'s Mem. Supp. Summ. J. Ex. 7.

[54]  *See, e.g.,* Notice of Default and Election to Sell letter dated June 16, 2003, Def.'s Mem. Supp. Summ. J. Ex. 17.

this requirement.  The statute provides that  "[a] lender . . .  must credit to a mortgagor's account

any payment received as of the date it was received . . . unless: (a) the payment is insufficient to

pay the principal, interest, *late charges, and the reserves* then due; (b) the loan has been referred

to an attorney because of default . . . ."[55]  As has been discussed throughout the opinion, the

Cooks failed to account for the reserves when making many of their payments.  Furthermore,

Chase may even qualify for the referral exception because it had referred the loan to its attorney

for collection.[56]  For all of these reasons, Chase is entitled to summary judgment on this claim.

### 3. Fair Debt Collection Practices Act

The Cooks' third cause of action – alleged violations under the Fair Debt Collection

Practices Act[57] – also fails as a matter of law.  In their complaint, the Cooks point to two statutes

that Chase allegedly violated: 15 U.S.C. § 1692e and 1692(f).  Section 1692e(4) reads that a debt

collector is prohibited from:

> The representation or implication that nonpayment of any debt will result in the arrest
> or imprisonment of any person or the seizure, garnishment, attachment, or sale of any
> property or wages of any person *unless such action is lawful and the debt collector
> or creditor intends to take such action.*[58]

Once again, the Cooks' misunderstanding of its mortgage obligations caused them to believe that

---

[55] *Id.* (emphasis added).

[56] Letter from Lundberg to Cooks dated June 27, 2002, Def.'s Mem. Supp. Summ. J. Ex. 6.

[57] 15 U.S.C. § 1692 - 1692(n) (1998).

[58] 15 U.S.C. § 1692(e) (emphasis added).

the default and foreclosure was unlawful.  However, the record does not demonstrate any unlawful actions by Chase, rather, it shows that Chase acted appropriately in its dealing with the Cooks.  The record is also clear that Chase intended to foreclose on the property, and that is an action that it eventually took.

The Cooks also assert that Chase violated Section 1692(e)(7), which prohibits "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer."  There is no evidence in the record that Chase, in an attempt to disgrace the Cooks, falsely represented or implied that the Cooks had committed any crime or other conduct.  Both of these claims fail as a matter of undisputed fact and law.

*4. Contract and Fraud Claims*

Finally, the court finds that Chase is also entitled to summary judgment on the contract and fraud claims because the Cooks failed to pay their required monthly loan payments in full as required by their loan, and Chase has demonstrated that it complied with its contractual, statutory, and other obligations in its management of the Cook mortgage loan.  As primary support for their breach of contract and fraud claims, the Cooks once again state that they overpaid each month.[59]  With respect to the fraud claim, the Cooks allege that "[a]ll of the defendants, and Chase, knew, or reasonably should have known, that Plaintiff was falsely informed that he owed $3,096 in order to reinstate his loan under paragraph 18 of the Deed of

---

[59] Compl. ¶ 77 ("During the period of 1999 to 2003, Plaintiff did better than make his principal and interest payments, as a matter of fact he paid more than the required sum.").

Trust."[60]  Both of these claims fail, primarily due to the Cooks' apparent misunderstanding of their loan obligations.

In addition to their arguments that they "overpaid" each month, the Cooks have attempted to avoid summary judgment by pointing to an alleged phone call from Chase in April 2003, informing the Cooks that their payment of $3,098 made in 2002 was being credited to their account, and an alleged letter from Chase dated November 11, 2003, informing the Cooks that the $3,098.76 had been posted to their account to cover payments from July 1, 2003 to November 1, 2003.  Chase asserts that the November 11 letter is a forgery.[61]  Upon close examination of the November 11 letter, the court also has its strong suspicions about the authenticity of the letter.  In particular: the date is on the same line as "Dear Mortgagor"; the letter reads that "Chase's goal is to *provided* the highest quality service" (emphasis added); the body of the letter does not align with the headings or the signature block; there are numerous spacing irregularities; the letter reads that "6 payments of $513.00 per month" had been adjusted to the loan but refers only to "July 01, 2003 to November 01, 2003" (five months); the letter contains no reference to an account number.  In light of these irregularities, a strong argument can be made that no reasonable juror could find the letter really came from Chase.  Nevertheless, the court is required to view the facts in the light most favorable to the nonmoving party.[62]  Therefore, the court will

---

[60] *Id.* ¶ 90.

[61] Def.'s Mem. Supp. Summ. J. 7.

[62] *Cortez v. McCauley*, 438 F.3d 980, 988 (10th Cir. 2006).

24

proceed on the assumption that the Cooks received the telephone call in April and that the

curious November 11 letter is, indeed, from Chase.  This assumption, however, does not defeat

Chase's right to summary judgment on all claims in this case.

Even if the Cooks received a telephone call in April informing them that their account

was credited the $3,098.76, the Cooks subsequently received written notices that their loan was

in default and that foreclosure proceedings were being initiated.  It is undisputed that Chase and

or its agent sent the Cooks three letters during the summer of 2003, informing them of their

default and the pending foreclosure.[63]  Ms. Cook signed for one of these letters[64] and testified at

her deposition that during the summer of 2003, she was aware that Chase believed they were in

default and that there were foreclosure proceedings pending against their property.[65]  Another one

of these letters states that "[u]nless within 30 days after [the Cooks] receive this notice, [the

Cooks] dispute the validity of the debt or a portion thereof, the debt will be assumed to be

valid."[66]  Furthermore, a notice of the trustee sale was placed on their property and a written

---

[63] *See* Notice of Default and Election to Sell letter dated June 16, 2003, Def.'s Mem. Supp. Summ. J. Ex. 17.;  Letter from Lundberg to Cook dated June 12, 2003,  Def.'s Mem. Supp. Summ. J. Ex. 16; Letter from Chase to Cooks dated June 10, 2003, Def.'s Mem. Supp. Summ. J. Ex. 15.

[64] Notice of Default and Election to Sell letter dated June 16, 2003, Def.'s Mem. Supp. Summ. J. Ex. 17.

[65] C. Cook Dep. 43:5-20.

[66] Letter from Lundberg to Cook dated June 12, 2003,  Def.'s Mem. Supp. Summ. J. Ex. 16.

notice of the sale was published in a newspapers on three separate occasions.[67]  Consequently, no reasonable juror could conclude that this earlier phone call somehow trumped the subsequent notices or somehow proves breach of contract, fraudulent action, or statutory violations.

With regard to the November 11 letter, the property had been sold at foreclosure *before* this letter was allegedly sent.[68]  Chase maintains without dispute that the account with the Cooks had been terminated by virtue of the October 2003 foreclosure sale.[69]  Thus, even if this letter were sent to the Cooks on November 11, it could not be a material fact that would defeat Chase's claims for summary judgment on the contract claim because the contract had terminated by that time.  Also, the November 11 letter does not preclude summary judgment for Chase on the fraud and statutory claims.  Chase could not have committed fraud against the Cooks in November 2003, because it no longer had any relationship with the Cooks – contractual or otherwise.  The letter refers to the fact that "[a]s of today" a subsequent loan payment of $513.00 was due December 1, 2003.  But since, as a matter of law, the contract had terminated, no such payment was due and the record is undisputed that Chase never attempted to collect it.  The letter could therefore, at most, be circumstantial evidence of some earlier violation or fraud.  But because Chase was entitled to collect all the funds it obtained earlier from the Cooks, no such fraud

---

[67] Affidavit of Posting Notice of Trustee's Sale dated Sep. 20, 2003, Def.'s Mem. Supp. Summ. J. Ex. 19.

[68] *See* Trustee's Deed, dated Oct. 23, 2003, Def.'s Mem. Supp. Summ. J. Ex. C.

[69] Def.'s Mem. Supp. Summ. J. 9. Defense counsel mistakenly writes that the foreclosure sale took place in September 2003, but the important issue is that the loan account had been terminated before the Cooks allegedly received the November 11, 2003 letter.

existed, and no statutory violation occurred.  Chase is therefore entitled to summary judgment on all claims.

## CONCLUSION

For the foregoing reasons, the court GRANTS Chase's motion for summary judgment (#23).  The Clerk's Office is directed to close this case.

SO ORDERED.

DATED this 19th day of March, 2007.

BY THE COURT:

Paul G. Cassell
United States District Judge